[No. A064379. First Dist., Div. Two. Mar. 27, 1995.]

IMPERIAL BANK, Plaintiff and Respondent, v.
PIM ELECTRIC, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

## COUNSEL

Williams & Williams, Robert J. Williams and Helen E. Williams for Defendants and Appellants.

Frandzel & Share, Joseph N. Demko, Chantal M. Eldridge and Marlene I. Camacho for Plaintiff and Respondent.

## OPINION

### KLINE, P. J.—

#### Introduction

Judgment debtors John and Barbara Pim and Pim Electric, Inc., appeal from an order of a referee appointed by the Alameda County Superior Court, ordering appellants to turn over to a levying officer 27 specific assets identified by appellants during their judgment debtor examinations to satisfy a debt owed to respondent Imperial Bank (Bank).[1] Appellants' principal contention is that the referee erred in issuing the turnover order before a determination of whether the assets covered by the order were exempt or subject to third party claims. Appellants also contend the turnover order denied them procedural due process safeguards under section 699.040, that the order was an improper remedy given the character of the assets at issue, and that they were prejudiced by the order. In their reply brief, appellants contend the referee lacked authority under the appointing order to conduct examination proceedings and to issue turnover orders in furtherance thereof.

#### Statement of the Case

On December 16, 1992, judgment was entered against appellants and in favor of respondent Bank in the amount of $543,000 plus interest, attorney fees and costs. Following the entry of judgment, a writ of execution was levied on money in the possession of the sheriff which had come from a previously attached bank account of appellants.[2] The Bank recovered approximately $60,000. The Bank asserts no other amounts have been recovered to satisfy the judgment against appellants.

---

[1] This appeal is authorized under Code of Civil Procedure section 904.1, subdivision (a)(2), as an order after an appealable judgment, enforcing the judgment. All further statutory references are to the Code of Civil Procedure, unless indicated.

[2] Appellants maintain the writ was "apparently returned and to date no further Notices of Levy have been served." Respondent Bank, while not directly asserting the writ of execution was outstanding at the time of the turnover order, nevertheless asserts that "[a]t the time the turnover order was issued, a writ of execution had been issued by the Court to aid the Bank

On May 28, 1993, the Bank began its judgment debtor examinations of John and Barbara Pim with Commissioner Alan H. Davidson presiding. To facilitate the examinations, the Bank had in April served appellants with a subpoena duces tecum requiring them to produce certain documents "so that the Judge or Referee can ascertain the scope of said judgment debtor's non-exempt property in order that the same may be ordered to be applied toward the satisfaction of the judgment pursuant to the Code of Civil Procedure Section 708.205, et seq." Following various continuances and document production disputes, appellants and their counsel appeared for hearing on September 3, 1993. Bank at that time requested the referee enter a turnover order in its favor, compelling appellants to turn over to a levying officer 27 specific assets identified during the judgment debtor examinations. After allowing appellants and their counsel an opportunity to review the contents of the Bank's letter and the index of exhibits, the referee ordered appellants to turn over all the assets and produce the additional documents identified in the letter. The referee executed the turnover order and it was filed on November 29, 1993. Notice of entry of the turnover order was filed and served on appellants' counsel on December 15, 1993. Appellants refused to turn over any of the assets identified in the order. This appeal seeks reversal of the order.

*Discussion*

I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

■ In their closing brief, appellants for the first time contend that the referee may have been acting under a "Standing Order of Reference" issued pursuant to section 639[5] by the presiding judge of the superior court. They contend that section 639 does not provide authority for a referee to preside over examination proceedings and that this authority can only be derived from section 708.140. We have taken judicial notice of the standing order in

---

in enforcing its judgment. The Debtors have not and cannot show that a valid writ of execution had not been issued and was not still in effect when the turnover order was issued." The record does not answer this question.

*See footnote, *ante*, page 540.

[5]Section 639, subdivision (b) provides:

"When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference in the following cases:

"[¶] . . . [¶] (b) When the taking of an account is necessary for the information of the court before judgment or for carrying a judgment or order into effect."

effect during the period in which the examinations took place and the turnover order was issued.

Appellants' failure to object to the referee's conduct of the examinations and to the turnover order on this ground both below and in their opening brief on appeal waives any error. (*Shain* v. *Peterson* (1893) 99 Cal. 486, 487 [33 P. 1085]; *Hendy Machine W.* v. *Pac. C. C. Co.* (1893) 99 Cal. 421, 423 [33 P. 1084]; *American Drug Stores, Inc.* v. *Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432]; cf. *Aetna Life Ins. Co.* v. *Superior Court* (1986) 182 Cal.App.3d 431, 436 [227 Cal.Rptr. 460]; see generally, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 1 (The Rutter Group 1993) ¶¶ 8:229, 8:244, 9:78 - 9:78.2, pp. 8-78, 8-81, 9-18.1.)[6, 7]

## III.

### *Statutory Background*

Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable. In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted. The EJL appears in sections 680.101 through 724.260 and is a comprehensive scheme governing the enforcement of all civil judgments in California. (Ahart, Cal. Practice Guide: Enforcing Judgments & Debts 2 (The Rutter Group 1994) ¶¶ 6:1-6:2, p. 6A-1 (hereafter Ahart).)

Examination proceedings (also called proceedings in aid of execution or supplementary proceedings) are one of several special procedures designed to aid judgment creditors. They permit the judgment creditor to examine the judgment debtor, or third persons who have property of or are indebted to

---

[6] Were we to conclude appellant could raise the issue of the referee's authority on appeal, it appears the order of reference under section 639 was broad enough to encompass reference for examination pursuant to section 708.205, particularly as the order itself states that Commissioner Davidson "is appointed as Referee for Order of Examinations." (Order Reappointing Referee for Judgment Debtor Examinations, filed Jan. 17, 1992)

[7] Respondent Bank contends that the referee had the authority to issue the turnover order under sections 699.040 (see fn. 11, *post*) and 639, subdivision (b). Our determination that the referee had ample authority under sections 708.140 and 708.205 to issue the turnover order makes it unnecessary to decide whether the referee had the authority the Bank claims under section 639, subdivision (b), to issue all orders necessary to carry the judgment or order into effect and whether the Bank fully complied with the requirements of section 699.040. It is not at all clear whether the Bank complied with section 699.040. Not only does the record fail to indicate whether a writ of execution was outstanding at the time of the turnover order, but the turnover order, although stating that disobedience of the order "may result in sanctions," does not contain the notice required by subdivision (c) that "failure to comply with the order may subject the judgment debtor to arrest and punishment for contempt of court." (§ 699.040, subd. (c).)

the judgment debtor, in order to discover property and apply it toward the satisfaction of the money judgment. (See §§ 708.110-708.205; 16 Cal. Law Revision Com. Rep. (Sept. 1982) p. 1124; Ahart, *supra*, ¶ 6:1270, p. 6G-1.)

"At the conclusion of an examination proceeding, the court or referee may order the judgment debtor's interest in property in the judgment debtor's or third person's custody or control, or a debt owed by the third person to the judgment debtor, to be applied to satisfy the money judgment if the property is not exempt from enforcement of a money judgment. [Code Civ. Proc., §§ 708.140, 708.205(a).] 'Such an order creates a lien on the property or debt' [Code Civ. Proc., § 708.205(a)] and is enforceable by contempt [Cal. Law Rev. Com. com., West's Ann. Code Civ. Proc., § 708.205 p. 455]." (2 Debt Collection Practice in California (Cont.Ed.Bar 1987) § 8.25, pp. 594-595.) ▮ Under section 708.120, subdivision (a), the court or referee may order the person examined, be it the judgment debtor or a third person, to deliver property or funds to a levying officer or directly to the judgment creditor. (*Lewis* v. *Neblett* (1961) 188 Cal.App.2d 290, 296-298 [10 Cal.Rptr. 441]; see Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.), § 708.205, p. 455 (hereafter Comment).) The court or referee may also appoint a receiver and may order the judgment debtor to make "necessary assignments or deliveries to the receiver for the purpose of sale or collection." (Comment to § 708.205, *supra*.) Moreover, the court or referee may order that execution be issued to collect the sum due. (*Ibid.*) Property that is to be sold under section 708.205, subdivision (a), will be sold by a levying officer, provided a writ of execution is outstanding, or by a court-appointed receiver. (Comment to § 708.205, *supra*.))

## IV.

▮ Appellants assert that the referee erred in ordering property which "may be" exempt from enforcement of a money judgment or subject to third party claims to be turned over to a levying officer. We shall conclude that the referee did not err in issuing the turnover order under section 708.205 as to such property, where appellants made no claim of exemptions prior to issuance of the order. However, appellants are not precluded from claiming exemptions as provided by the EJL, following their compliance with the turnover order.

### A.

Section 708.205, subdivision (a), states: "(a) Except as provided in subdivision (b), at the conclusion of a proceeding pursuant to this article, the court may order the judgment debtor's interest in the property in the

possession or under the control of the judgment debtor or the third person or a debt owed by the third person to the judgment debtor to be applied toward the satisfaction of the money judgment *if the property is not exempt from enforcement of a money judgment.* Such an order creates a lien on the property or debt." (Italics added.)

The Comment to section 708.205 observes that subdivision (a) "continues the broad authority provided by former Section 719 for the court to order any nonexempt property or debt to be applied toward the satisfaction of the judgment. . . . Under subdivision (a), the person examined—whether the judgment debtor or a third person—may be ordered to deliver property or funds to the levying officer."

Section 708.140 provides statutory authority for a referee appointed by the court to conduct examination proceedings. Further, "the referee may issue, modify, or vacate an order authorized by Section 708.205," and has other powers delineated by that section. (§ 708.140.) Clearly the referee had the authority to issue a turnover order pursuant to this section. (See *Lewis v. Neblett, supra,* 188 Cal.App.2d 290) However, only the court that ordered the reference has power to "[d]etermine a contested claim of exemption or determine a third-party claim under Section 708.180." (§ 708.140, subd. (a)(3).) Consequently, had appellants raised a claim of exemption in the examination proceeding, the court, and not the referee would determine the claim.

Appellants argue that the property must be determined to be "not exempt" before issuance of the turnover order. By its terms, section 708.205 authorizes the referee to order the debtor to turn over property if it is "not exempt." We read that section as empowering the referee to issue a turnover order unless the judgment debtor raises claims of exemption in the examination procedure or prior to issuance of the turnover order.

Alternatively, we may presume the referee determined the property to be "not exempt" in the absence of any contested claim raised by the judgment debtor.[8] Because, as we later explain, appellants have additional opportunities to raise claims of exemption, appellants cannot show they were prejudiced by the turnover, even if the court erroneously determined the property to be "not exempt."

Exemptions "apply to all procedures for enforcement of a money judgment." (§ 703.010.) Yet, with few exceptions, the debtor must raise the

---

[8]The examination in supplementary proceedings is not a trial and no written findings in support of the turnover order are required. (See 2 Debt Collection Practice, *supra,* § 8.27, p. 596.)

claim of exemption or it is waived. (§ 703.030.)[9] Appellants here made no such claim in the examination proceeding or thereafter in the superior court.

### B.

Appellants argue they had no opportunity to formally assert claims of exemption because the turnover order was entered without issuance of a writ of execution or notice of levy. They contend that under the statutory scheme, the notice of levy triggers claims of exemption. Consequently, appellants appear to argue that both issuance of a writ of execution and service of a notice of levy must precede issuance of a turnover order under section 708.205. We disagree.

"The notice of levy informs the person served of the capacity in which the person is served (such as judgment debtor, garnishee, or interest holder of record), the property that is levied upon, the person's rights under the levy (including the right to make a third-party claim or to claim an exemption), and the person's duties under the levy . . . . Notice of levy is required to be given promptly to the judgment debtor in every case. A levy is valid, however, even if no notice is given to the judgment debtor or a third person, provided that the essential levy requirements are satisfied." (16 Cal. Law Revision Com. Rep., *supra*, p. 1059.)

The examination proceeding and the accompanying authorization of turnover orders enforceable by contempt sanctions are an alternative to proceeding by way of levy under a writ of execution and may precede a notice of levy.

"The proposed law provides that the court may issue an order in appropriate cases requiring the debtor to transfer possession of property *sought to be levied upon* to the levying officer or to transfer to the levying officer evidence of title to property levied upon." (16 Cal. Law Revision Com. Rep. *supra*, p. 1013, italics added.) The order occurs prior to the levy. Commentators cite as one of the advantages of the examination procedure, the

---

[9]Section 703.030 provides:

"(a) An exemption for property that is described in this chapter or in any other statute as exempt may be claimed within the time and in the manner prescribed in the applicable enforcement procedure. If the exemption is not so claimed, the exemption is waived and the property is subject to enforcement of a money judgment.

"Except as otherwise specifically provided by statute, property that is described in this chapter or in any other statute as exempt without making a claim is not subject to any procedure for enforcement of a money judgment.

"(c) Nothing in this section limits the authority of the court pursuant to Section 473 to relieve a person upon such terms as may be just from failure to claim an exemption within the time and in the manner prescribed in the applicable enforcement procedure."

availability of a " 'turnover order' requiring the debtor or third person to deliver the identified assets to the levying officer . . . ." (Ahart, *supra*, ¶ 6:1273, p. 6G-1.) "Such orders are enforceable by contempt, and may be far more effective than levying on property under writ of execution." (*Ibid.*)

"A judgment creditor may also obtain a turnover order *in aid of execution* . . . . However, a turnover order issued in connection with an examination proceeding generally is of greater use because it reaches a broader range of property, can be directed to third party examinees, may require delivery of property directly to the judgment creditor and creates a lien on the property subject to the order." (Ahart, *supra*, ¶ 6:1338.1, p. 6G-16.1.)

The legislative committee comment to section 703.030 states: "If property is levied upon by a levying officer, the applicable procedure for claiming an exemption is that provided in Article 2 (commencing with Section 703.510), with the exception of a homestead exemption which is governed by Article 4 (commencing with Section 704.710) . . . . *If the property is sought to be reached by a procedure other than by levy under a writ, a court hearing is required and exemption claims will be determined at such time or later upon noticed motion. See Sections 708.120 (examination proceedings), . . .*" (Legis committee com., 17 West's Ann. Code Civ. Proc. § 703.030 (1987 ed.) p. 291, italics added.) Clearly, a section 708.205 turnover order issued following examination proceedings is an alternative to proceeding by way of levy under a writ of execution. A notice of levy may be served after the debtor complies with the turnover order.

## C.

Appellants contend they were never provided notice that they could claim exemptions and were provided no indication of any time frame within which exemptions must be claimed or waived. Although we have rejected appellants' contention that no turnover order may be issued prior to a notice of levy, we believe that appellants cannot be deemed to have waived any claims of exemption until they are advised they have such exemption rights.

Section 708.205 does not set forth the procedure whereby a judgment debtor may assert a claim of exemption in the judgment debtor's own examination proceeding.[10] In contrast to the absence of detailed instructions for the making of claims by the judgment debtor during his or her examination, section 708.120 (regarding examination of third persons where the third

---

[10]However, the Law Revision Commission Report outlining the changes in the law states under the heading "Miscellaneous procedures for enforcement of money judgments" as follows: "The proposed law makes clear that the debtor may obtain a determination of exemption claims in the proceedings before the court. The proposed law gives the court

person is averred to have possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor) sets forth in detail the procedures whereby the judgment debtor may make a claim of exemption in the third person's examination proceeding, and provides that failure of the judgment debtor to claim the exemption at the hearing waives the exemption, where the property is described so as to reasonably permit its identification.

Section 708.120, subdivision (d), provides: "The judgment debtor may claim that all or any portion of the property or debt is exempt from enforcement of a money judgment by application to the court on noticed motion . . . . The judgment debtor shall execute an affidavit in support of the application that includes all of the matters set forth in subdivision (b) of Section 703.520. If a claim of exemption is made pursuant to this section, a notice of opposition to the claim of exemption is not required. The court shall determine any claim of exemption made pursuant to this section. Failure of the judgment debtor to make a claim of exemption does not preclude the judgment debtor from later claiming the exemption unless the property or debt is described in the order in a manner reasonably adequate to permit it to be identified and the judgment debtor receives notice of the examination proceeding at least 10 days before the date set for the examination."

The legislative committee comment to section 708.120 provides: "Subdivision (d) is drawn from comparable provisions in the Attachment Law. See Sections 428.100 and 484.070. It makes explicit a principle that was implicit in a provision of former section 719 for the application of property 'not exempt from execution' toward the satisfaction of the judgment. *This necessarily involves a determination of the existence of exemptions prefatory to issuing an order applying the property toward satisfaction of the judgment.*

---

discretion to determine an adverse claim of a third person made in examination proceedings; the court does not have this authority under existing law. [¶] . . . [¶] Under existing law, the method of enforcing the lien is not clear. The proposed law permits the court, on application of the creditor or a party to the action, to order the money or property applied to the satisfaction of the lien. The proposed law also adds a procedure for determining any exemption claim." (16 Cal. Law Revision Com. Rep., *supra*, at p. 1020.)

Although the Law Revision Commission Report states the proposed law adds a procedure for determining any exemption claim, this assertion appears related to the procedures outlined in section 708.120 enabling the judgment debtor to raise claims of exemption in the creditor's examination of a third person asserted to be the debtor of the judgment debtor or to have control or possession of property of the judgment debtor.

As explained in Ahart, *supra*, some of the comments of the California Law Revision Commission on the EJL "do not accurately reflect the Code statutes ultimately adopted; nevertheless, the official comments provide valuable insight necessary to a full understanding of the EJL." (Ahart, *supra*, ¶ 6:3, p. 6A-1.)

See Section 703.010 (exemptions apply to all procedures for enforcement of money judgments).

"The court may also determine in the examination proceedings that the property sought to be reached may properly be applied to the satisfaction of the judgment through an order in examination proceedings. [Citation.]

". . . . If the judgment debtor fails to claim the exemption at the hearing when required to do so under subdivision (d), the exemption is waived, subject to the authority of the court to relieve the judgment debtor from the failure pursuant to Section 473." (Legis. committee com., 17 West's Ann. Code Civ. Proc. (1987 ed.) § 708.120, p. 442, italics added.)

Consequently, the requirement of prior determination of any claim of exemption referred to in this comment relates to the third party examination procedure, wherein the judgment creditor, judgment debtor, and the third party have all been given notice describing the property and in which proceeding the judgment debtor has properly filed and served a claim of exemption. (See generally, 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 278, pp. 240-241.)

■ Although section 708.205 does not set forth in similar detail the time or manner in which the debtor may claim exemptions during the judgment debtor's own examination proceedings, the judgment debtor has several opportunities to do so. Section 703.100, subdivision (a), which specifies when the determination of exemptions may be made, provides some guidance as to when the judgment debtor may raise claims of exemption in the examination proceeding. That section provides that the determination whether property is exempt shall be made under the circumstances existing at the earliest of the following times: (1) the time of levy; (2) the time of the commencement of court proceedings for the application of the property to the satisfaction of the money judgment; or (3) the time a lien is created under the EJL. (See 8 Witkin, Cal. Procedure, *supra*, § 171, p. 160.)

Section 703.100 "adopts the principle that the question of exemptions does not arise until the judgment creditor has sought to apply the judgment debtor's property toward the satisfaction of the judgment. [See *Medical F. Assn.* v. *Rambo* (1938) 33 Cal.App.2d Supp. 756, 758-60 (86 P.2d 159)]." (Legis. committee com., 17 West's Ann. Code Civ. Proc., *supra*, § 703.100, p. 298.)

Under the debtor examination statute, the lien upon all nonexempt property is created at the time the judgment debtor is served with notice of the

examination. (§ 708.110, subd. (d); Ahart, *supra*, ¶ 6:1302, p. 6G-8.) Unlike the third party examination case where the property must be adequately identified for the lien to attach, the lien on the judgment debtor's property attaches whether or not the property is described in the notice in sufficient detail to be reasonably identifiable. (See, 16 Law Revision Com. Rep., *supra*, p. 1127.)

■ Consequently, while a judgment debtor might file a claim of exemption at any time after receiving notice of the examination, no waiver of the right to claim exemptions should occur from failure to do so until, at the earliest, the creditor seeks the turnover order, identifying the property sought to be turned over to a levying officer. (Cf. § 708.120.) The EJL does not require that appellants be provided with notice of their right to claim exemptions prior to issuance of the turnover order. However, having received no notice of their right to claim exemptions in the examination proceeding or prior to issuance of the turnover order, appellants are not precluded from raising any claims of exemption following their compliance with the turnover order. Further, as discussed presently, upon taking custody of tangible personal property the levying officer must promptly serve appellants with copies of the notice of levy and the form listing exemptions. (*Post*, p. 555.) As appellants will be able to raise any exemption claims at that point, they clearly cannot show they were prejudiced by the lack of notice.

## V.

■ Appellants contend they were denied procedural due process safeguards dictated by section 699.040,[11] relating to the issuance of ex parte turnover orders. Initially, we note that section 699.040 is inapplicable here. We have determined the turnover order was authorized by section 708.205 following the examination of the judgment debtor. A section 699.040 turnover order is a "turnover order in aid of execution" and the requirements of

---

[11]Section 699.040 provides:

"(a) If a writ of execution is issued, the judgment creditor may apply to the court ex parte, or on noticed motion if the court so directs or a court rule so requires, for an order directing the judgment debtor to transfer to the levying officer either or both of the following:

"(1) Possession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody.

"(2) Possession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon. An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter.

"(b) The court may issue an order pursuant to this section upon a showing of need for the order.

"(c) The order shall be personally served on the judgment debtor and shall contain a notice to the judgment debtor that failure to comply with the order may subject the judgment debtor to arrest and punishment for contempt of court."

that section are not found in section 708.205. (See Ahart, *supra*, ¶ 6:1338.1, p. 6G-16.1.)

Moreover, the statutory framework within which the turnover order was issued safeguards the judgment debtor's procedural due process rights and allows for the assertion of exemptions following issuance of the order, where the debtors have neither raised nor waived their claims of exemption prior to issuance of the order.

The turnover order requires appellants to turn over the listed property to a levying officer. In order for appellants' tangible personal property to be levied upon, a levying officer must take the property into his custody. (See § 700.030.) Once the property is within the levying officer's custody, the levying officer is required to serve on the judgment debtor a copy of a writ of execution, a notice of levy, and if the judgment debtor is a natural person, a copy of the form listing exemptions. (§ 700.010.) Once a notice of levy is served, the exemption and third party claim statutes become operable. Specifically, pursuant to section 703.520, subdivision (a): "The claimant may make a claim of exemption by filing with the levying officer a claim of exemption together with a copy thereof. The claim shall be made within 10 days after the date of the notice of levy on the property claimed to be exempt was served on the judgment debtor . . . ."

After a claim of exemption is filed, the levying officer must serve a copy of the claim upon the judgment creditor (§ 703.540), and a judgment creditor opposing the exemption claim must file opposition and a notice of motion for an order determining the claim of exemption with the levying officer and with the court. (§ 703.550.) A hearing on the motion must be held within 20 days from the date of filing of the notice of motion, unless continued for good cause. (§ 703.570.) The court (not a referee) must determine any contested claim of exemption. (§ 708.140, subd. (a)(3).) The levying officer is prohibited from releasing, selling or otherwise disposing of the property for which an exemption is claimed until the final determination of the exemption. (§ 703.610.) Appellants' claim that their boat is a dwelling exempt from execution is to be made and determined as provided above. (§ 704.740, subd. (b)(2); Comment, *supra*, p. 351.)

Similarly, procedural safeguards are provided for persons making a third party claim. (§ 720.120 et seq.)

Based upon this statutory framework, appellants and any third parties with interests in the property have ample opportunity to file their claims of exemptions and third party claims after the levying officer takes custody of

the property, and no property can be released, sold or disposed of except as provided above after compliance with statutory requirements imposed upon both respondent Bank and the levying officer.

In summary, we find no impairment of appellants' procedural due process rights in the issuance of the turnover order prior to determination of claims of exemption where appellants did not raise any exemption claims in the examination procedure or prior to issuance of the turnover order and where there exists an opportunity for appellants and third parties to raise such claims upon the levying officer's taking custody of the property and serving a notice of levy upon them at that time or immediately thereafter. (Cf. *Phillips* v. *Bartolomie* (1975) 46 Cal.App.3d 346 [121 Cal.Rptr. 56], rejecting the contention that levy on exempt property without a prior judicial hearing is a denial of due process.) There is no arbitrary deprivation of property in the requirement that a judgment debtor claim and prove his or her exemption. (8 Witkin, Cal. Procedure, *supra*, Enforcement of Judgment § 165, p. 156.)

## VI.

■ Appellants claim the turnover order is an improperly fashioned remedy because it does not specify the method of disposition of the property by the levying officer. Appellants maintain that the method of disposition depends upon the character of the property at issue and that the turnover order is defective because it does not expressly direct the sale of appellants' interests in any of the assets, but contains a handwritten notation of the commissioner that "Any excess funds realized from the sale, if any, from the sale of aforesaid assets by levying officer in excess of judgment including interest or costs is to be refunded to the defendants."

Again, appellants misapprehend the nature of the turnover order issued here. The turnover order provides the method by which the levying officer is to gain possession of the judgment debtor's property. Section 708.205 does not limit the type of property to which a turnover order may be applied. In fact, commentators have remarked upon the breadth of property reached by such order as one of its attributes. (See Ahart, *supra*, ¶ 6:1338.1, p. 6G-16.1.) The Law Revision Commission recognized the variety of property which may be the subject of such an order. Although the court is authorized to order the person examined to deliver property or funds to the levying officer or to pay the creditor directly (§ 708.205; see *Hustead* v. *Superior Court* (1969) 2 Cal.App.3d 780, 783-787 [83 Cal.Rptr. 26]); it may also appoint a receiver, order the judgment debtor to make necessary assignments or deliveries to the receiver for the purpose of sale or collection, or order

execution to be issued to collect the amount due. (Law Revision Com. com., 17 Wests Ann. Code Civ. Proc. (1987 ed.) § 708.205, p. 455.)

Where, as here, the court orders the property turned over to the levying officer, the EJL provides the details for disposition of the property once the levying officer has the property in custody. Specifically, section 701.510 provides: "Subject to Sections 687.020 and 701.520, the levying officer shall sell all property that has been levied upon except: [¶] (a) Tangible personal property may not be sold until the levying officer obtains custody of the property. . . ." Section 701.520 provides that certain property such as accounts receivable, chattel paper, general intangibles, final money judgments, instruments not customarily transferred in an established market, and instruments that represent an obligation arising out of the sale or lease of the property, "shall be collected rather than sold" (subd. (a)) and provides mechanisms whereby the judgment creditor may seek to have the same sold and the judgment debtor may apply to the court for an order that the levying officer continue to collect the property until otherwise ordered by the court (subd. (b)). Section 701.530 sets forth requirements for sale of personal property and section 701.540 set forth requirements for sale of interests in real property.

Because the disposition of all property held by the levying officer is expressly provided for by the EJL, the turnover order, as written, is properly fashioned to accomplish the turnover of assets to the levying officer.

## VII.

In their reply brief, appellants for the first time argue that the turnover order is facially defective because it directs the turnover of property which is ipso facto exempt even in the absence of a claim. (§§ 695.040, 703.030, subd. (b), 703.510, subd. (b).)[12] Items 17 through 22 of the order directs the "assignment" of all of appellants' rights in policies of life insurance. Unmatured life insurance policies (excluding the loan value) are exempt without making a claim. (§ 704.100.) Additionally, appellants point out that property that is not transferable, such as property previously assigned pursuant to a

---

[12]"Property that is not subject to enforcement of a money judgment may not be levied upon or in any other manner applied to the satisfaction of a money judgment. If property that is not subject to enforcement of a money judgment has been levied upon, the property may be released pursuant to the claim of exemption procedure provided in Article 2 (commencing with Section 703.510) of Chapter 4." (§ 695.040.)

"Except as otherwise specifically provided by statute, property that is described in this chapter or in any other statute as exempt without making a claim is not subject to any procedure for enforcement of a money judgment." (§ 703.030, subd. (b).)

"If property that is exempt without making a claim is levied upon, it may be released pursuant to the exemption procedure provided in this article." (§ 703.510, subd. (b).)

perfected security interest under the Commercial Code, is generally not subject to enforcement. (§ 695.030.) We shall not entertain a claim raised for the first time in a reply brief. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 2, *supra*, ¶¶ 9:78 - 9:78.2 p. 9-18.1.)

Moreover, this court is not the proper forum for determination of whether the listed items are exempt in the absence of a claim. The remedy provided by the statute is to seek release through the exemption procedure. (See § 695.040; Ahart, *supra*, ¶¶ 6:870-6:873.)

## VIII.

■ Finally, the Bank seeks an award of attorney fees on appeal on the ground that this appeal involves the enforcement of a money judgment based upon a contract providing for attorney fees. (Civ. Code, § 1717.)

Attorney fees on appeal are ordinarily recoverable only if authorized by statute. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 2, *supra*, ¶ 14:113, pp. 14-19 to 14-20, and cases there cited.) Statutory authorization for the recovery of attorney fees incurred in trial court proceedings *necessarily* includes attorney fees incurred on appeal unless the statute specifically provides otherwise. (*Id.*, at ¶ 14:114, p. 14-20.) The relevant statutes regarding recovery of attorney fees in enforcing a judgment are sections 685.040 and 685.070, subdivision (a)(6). Section 685.040 provides as follows: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title *if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (a) of paragraph (10) of subdivision (a) of section 1033.5.*" (Italics added.)[13]

Section 685.070 provides in relevant part: "(a) The judgment creditor may claim under this section the following costs of enforcing a judgment: [¶] . . . [¶] (6) Attorney's fees, if allowed by Section 685.040."

---

[13]Prior to the 1992 amendment of section 685.040 to add the final sentence authorizing fees as costs where the underlying judgment includes such award, it had been held that where recovery of fees was posited upon provisions in the underlying contract, entry of judgment extinguished the contractual rights (including contractual attorney fees rights), and the plaintiff was not entitled to fees as costs for enforcement of the judgment. No exception was made where the underlying judgment included an attorney fee award. (See *Chelios* v. *Kaye* (1990) 219 Cal.App.3d 75, 80 [268 Cal.Rptr. 38]; *Hambrose Reserve, Ltd.* v. *Faitz* (1992) 9 Cal.App.4th 129, 132 [11 Cal.Rptr.2d 638]; cf. *Tomaselli* v. *Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770 [31 Cal.Rptr.2d 224].)

Although it appears the underlying judgment was based upon a note and guarantees which provided for recovery of attorney fees, the judgment itself does not award attorney fees and there is nothing in the record to indicate that the trial court awarded attorney fees pursuant to Civil Code section 1717 or any other statute. The absence of any fee award in the underlying judgment precludes the recovery of fees as costs in the trial court for enforcing the money judgment, and necessarily precludes the award of attorney fees on this appeal.

The judgment is affirmed. Respondent Bank is awarded its costs on appeal.

Phelan, J., and Haerle, J., concurred.